CAUSE NUMBER: 2012-40278-362

| | | |
|---|---|---|
| ERIC DRAKE | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | DENTON COUNTY, TEXAS |
| VS | § | |
| | § | |
| PENSKE TRUCK LEASING CO. L.P. | § | |
| FREIGHTLINER, LLC, DAIMLER | § | |
| TRUCKS NORTH AMERICA LLC, AND | § | |
| GALLAGHER BASSETT SERVICES, INC. | § | 362nd JUDICIAL DISTRICT |
| Defendants | | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Eric Drake, hereinafter referred to as "Plaintiff" and bring this action against the Defendants, Penske Truck Leasing Company, hereinafter referred to as "Defendant" or "Penske," Daimler Trucks North America LLC (hereafter Daimler or DTNA) and Freightliner, LLC (a subsidiary or division of Daimler Trucks) hereafter referred to as "Freightliner" or "Defendant" or "DTNA/Freightliner" Gallagher Bassett Services, Inc., hereinafter referred to as "Defendant" or "Gallagher" and for cause of action would show as follows:

### NATURE OF THE ACTION

1. This is an action for damages suffered by the Plaintiff as a direct and proximate result of the Defendants' Penske, Daimler Trucks, and Freightliner Trucks negligent and wrongful conduct and in connection with Penske's failure to maintain proper maintenance of the product (drivers air suspension chair of a M2 Freightliner 24 foot truck leased to Plaintiff), and DTNA/Freightliner's improper design, development, and manufacture of the air suspension driver's chair that was installed in the M2 Freightliner that the Plaintiff operated and used.

1

2. At all times material hereto, the M2 Freightliner truck that was leased to the Plaintiff with its defective air suspension drivers' seat was overseen by and under the custody and control of Penske, and or was manufactured by the Defendants DTNA/Freightliner.

3. After the Plaintiff was injured as a result of the defective air suspension drivers' seat in the M2 Freightliner truck, Penske and or Gallagher refused to pay any of the Plaintiff's medical expenses or compensate the Plaintiff in any manner for the injuries he suffered on or about August 1, 2009.

## SERVICE OF PROCESS OF DEFENDANTS

4. Defendant Penske Truck Leasing Company is licensed to do business in the State of Texas and who may be duly served with citation and process by and through its registered agent as follows: Corporation Service Company, D.B.A. CSC—Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 75801.

5. Defendant Daimler Trucks North America, is a company licensed to do business in the State of Texas and who may be served with citation and process by and through its registered agent as follows: CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

6. Defendant Freightliner LLC, is a company licensed to do business in the State of Texas and who may be served with citation and process by and through its registered agent as follows: CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

7. Defendant Gallagher Bassett Services, Inc., is licensed to do business in the State of Texas and who may be duly served with citation and process by and through its registered agent as follows: Corporation Service Company, 2711 Centerville Road, Wilmington, Delaware 19808.

## DISCOVERY CONTROL PLAN

8. Plaintiff contends that discovery in this matter be conducted under Level Three, pursuant to Rule 190.4 of the Texas Rules Of Civil Procedure.



## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this claim as Plaintiff seeks monetary damages within the jurisdictional limits of the Court.

10. Venue is proper in Denton County, Texas pursuant to the fact that the Defendants have ties to Denton County, Texas through its business contacts. Venue is also proper in Denton County, Texas pursuant to the fact that the Defendants conducts business in Denton County, Texas and is continuing to do business in this County. Plaintiff served their registered agent pursuant to business orgs. Code §§5.201(a)-(b), and 5.255(1).

11. Defendant DTNA/Freightliner built the truck in which the Plaintiff leased from Penske in or around August 1, 2009, and thus is equally responsible for the Plaintiffs injuries.

12. At all relevant times, the Defendant, DTNA/Freightliner transacted, solicited, and conducted business in the State of Texas and derived substantial revenue from such business.

13. At all relevant times, the Defendant, PENSKE transacted, solicited, and conducted business in the State of Texas and derived substantial revenue from such business.

14. At all relevant times, the Defendant Penske had custody and control over the vehicle that the Plaintiff leased and that Penske was engaged in the business of leasing trucks to consumers in Dallas County, Texas.

## FACTUAL ALLEGATIONS

15. Plaintiff leased a M2 Freightliner truck from Defendant Penske on or about August 1, 2009. Defendant DTNA/Freightliner manufactured the M2 Freightliner's truck that the Plaintiff leased on or about August 1, 2009. The air suspension drivers' seat of the M2 Freightliner truck that the Plaintiff leased on or about August 1, 2009, was defective. We know the drivers' seat was defective because it failed to perform, as it should have by unexpectedly

3



dropping in a sudden jarring downward motion to the floor of the vehicle, causing personal injuries to the Plaintiff.

16. Defendant Penske had custody and control of the M2 Freightliner truck that the Plaintiff leased in or around August 1, 2009, at all relevant times just before the Plaintiff leased the truck from Penske, and right before the Plaintiff was injured in the truck.

17. It was the Defendant Penske responsibility to inspect and maintain the drivers' air suspension seat of the M2 Freightliner to be safe and in good working order that the Plaintiff leased prior to his accident on or about August 1, 2009.

18. Plaintiff aver that when Defendant Penske leased the M2 Freightliner truck to him without properly checking and maintaining the truck's air suspension drivers' seat to be safe for all drivers' and free from defect that, that Penske was negligent.

19. Plaintiff was only aware that the drivers' air suspension seat was defective when he came upon a small bump in a paved residential street but by that time the drivers' air suspension seat dropped violently in a downward motion causing injury the Plaintiff.

20. Defendant Penske knew or should have known that the drivers' air suspension seat needed to be checked from time to time, but Penske failed to inspect and assure that the air suspension seat was working properly and the seat dropped unexpectedly, in a harsh downward motion towards the floor of the cab of the vehicle, causing injury to the Plaintiff.

21. Defendant DTNA/Freightliner knew or should have know that the drivers' air suspension seat of the M2 Freightliner should be checked regularly to assure safety to the truck's operator and to maintain its functionality and reliability for the safety and welfare of its users.

22. Given the fact that the drivers' air suspension seat had the possibility of malfunctioning (dropping in a downward motion) Defendant Penske through its leasing employee's should have warned the Plaintiff prior to leasing the truck that the air suspension seat



4

could be unstable, and the drivers' seat should have been inspected just prior to releasing the vehicle to the Plaintiff. Penske employees failed to check the seat prior to releasing the truck.

23. Given the fact that the drivers' air suspension seat had the possibility of malfunctioning (dropping in a downward motion) Defendant DTNA/Freightliner should have warned its users by some type of written warning on or around the seat that it could malfunction.

24. Omitting or failure by DTNA/Freightliner to place warnings on or around the drivers' air suspension seat concealed critical safety information regarding use of the air suspension drivers' seat, which allowed the user to unknowingly use the seat to the users detriment. Defendants Penske and DTNA/Freightliner, each of them, continue to engage in conduct likely to mislead consumers including, but not limited to, the Plaintiff, and which is deceptive, unfair, and unlawful.

25. Plaintiff Eric Drake is 58 years of age. He admits that in 1989 he had surgery on his lumbar area of his body. He has rented trucks from Penske prior to August 1, 2009 incident and he has rented trucks from other truck leasing companies after August 1, 2009 without incident, but those trucks did not employ an air suspension drivers' seat.

26. Plaintiff only had the M2 Freightliner that he leased from Penske on or about August 1, 2009, in his possession for about 30 minutes, which was the time it took to report to Penske that the drivers' air suspension seat had malfunctioned (dropped in an downward motion to the floor of the truck in a forceful manner) and for Plaintiff to report his injury to the Penske location that he leased the truck. Plaintiff returned the truck to Defendant Penske immediately.

27. Upon returning the M2 Freightliner to Defendant Penske, and informing an employee of Penske, (J. Scott) in Dallas, Texas of the malfunctioned drivers' air suspension seat and injury, Scott sat in the drivers' seat of the 24-foot truck, with the license plate of 82NXW4.

28. After J. Scott, employee of Defendant Penske sat in the seat of the M2 Freightliner truck that the Plaintiff leased on or about August 1, 2009, license plate 82NXW4; Scott admitted that the air suspension seat did in fact seem to be unstable (loose) in his opinion.

Scott and the Plaintiff weight were about the same and he advised the Plaintiff that he was going to have the seat examined by mechanics at Penske.

29. Plaintiff Eric Drake suffered from extreme physical pain, numbness, and other pain in his lower back and legs to the point of making it extremely painful and difficult for the Plaintiff to operate a vehicle of any kind. The pain also made it difficult to get in or out of a car as a result of his injuries that occurred on or about August 1, 2009. Some of the affects from the injuries persist to this very day.

30. Had the Defendants Penske and DTNA/Freightliner disclosed the risks associated with using the drivers' air suspension seat in the M2 Freightliner, Plaintiff Eric Drake would not have used the truck. Plaintiff is fully aware that he had surgery to his lower lumbar area. Plaintiff's surgeon warned him that he should not take any hard blows, or trauma to his lumbar area. That such a blow could cause irreversible and permanent damage to his body.

31. As alleged herein, as a direct and proximate result of the Defendants' negligence and wrongful conduct, and the unreasonably defective characteristics of the air suspension drivers' seat, Plaintiff Eric Drake suffered severe physical injuries, hardship, pain and suffering. Plaintiff has incurred medical expenses and treatment but Defendant Penske refused to pay any of those cost as a result of Plaintiff injuries. Plaintiff Eric Drake has and continues to suffer physical pain and suffering, and emotional damages in access of $75,000.00. Defendant Penske refused to compensate the Plaintiff Eric Drake in any manner, and by doing so violated the Texas Insurance Code, Penske was deceptive, and it is also the Plaintiff belief that he was treated in this manner because of his race, African American.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## AGAINST DEFENDANTS PENSKE AND DAIMLER/FREIGHTLINER TRUCKS

32. Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

33. At all times material to this action, the Defendant Penske had custody and control over the M2 Freightliner truck that was leased to the Plaintiff on or about August 1, 2009, and Defendant Penske was responsible for all and any maintenance on the truck.

34. At all times material to this action, the Defendants DTNA/Freightliner was responsible for developing, manufacturing the drivers' air suspension seat in the M2 Freightliner that the Plaintiff leased from Penske because DTNA/Freightliner manufactured the truck. Defendant DTNA/Freightliner was aware that in the past, that the drivers' air suspension seats has malfunctioned and that those seats could drop unexpectedly without prior warning.

35. At all times material to this action, the M2 Freightliner truck that the Plaintiff leased from Defendant Penske was manufactured by Defendants DTNA/Freightliner with the (air suspension drivers' seat) was expected to reach, and did reach, consumers in the State of Texas and throughout the United States, including the Plaintiff Eric Drake herein, and without any written (notices or warnings of any kind to alert consumers of possible dangers) or substantial change in the condition in which the vehicle was sold to companies or consumers in Texas.

36. In addition, at the time Defendant DTNA/Freightliner was fully aware that the air suspension seats were known to drop unexpectedly and thus could cause injury to the operator of the vehicle. There were practical and feasible alternatives designs that would have prevented and/or significantly reduced the risk of Plaintiff Eric Drake injuries without impairing the reasonably anticipated or intended function of the seat. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of the Plaintiff Eric Drake injuries without substantially impairing the products' utility.

37. Defendant DTNA/Freightliner knew or should have know that the ultimate users or consumers of the air suspension seats would not, and could not, know that the seats were capable of causing injury to its operator. DTNA/Freightliner knew of the potential harm the air suspension drivers' seats could cause and that the seats were threat to the safety of the user and/or consumers.

38. Upon Plaintiff Eric Drake operating the M2 Freightliner truck that he leased from Penske on or around August 1, 2009, he had no foreseeable notice that the air suspension seats would be a danger to him, but the dangers were reasonably foreseeable to the Defendants DTNA/Freightliner, and in a manner that was reasonably foreseeable by the Defendants DTNA/Freightliner as involving a substantial danger not readily apparent if adequate instructions regarding the use and warnings of the danger were not given.

39. Plaintiff Eric Drake was a foreseeable user of the M2 Freightliner truck with its air suspension seats that was known to drop unexpectedly without prior warning because he is a consumer.

40. As alleged herein, as a direct and proximate result of the Defendant DTNA/Freightliner and Penske acts and omissions, and the unreasonably dangerous and defective characteristics of the air suspension seats that were known to DTNA/Freightliner, and in all probability to also Penske, Plaintiff suffered severe physical injuries, and mental anguish. Plaintiff has also incurred medical expenses and care, and treatment. The Plaintiff seeks actual and punitive damages from the Defendants Penske and DTNA/Freightliner as alleged herein.

41. Plaintiff Eric Drake losses were the legal and proximate result of the defects associated with the air suspension seats of the M2 Freightliner truck that he leased from Penske in or around August 1, 2009, including but not limited to Defendants' Penske and DTNA/Freightliner failure to provide adequate instructions for use and warnings of the risks of substantial harm associated with the foreseeable use of said products. Plaintiff has suffered physical and emotional damages.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE**
**AGAINST DEFENDANTS PENSKE AND DAIMLER/FREIGHTLINER TRUCKS**

42. Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

8

43. Defendant DTNA/Freightliner owed a duty to the Plaintiff to use reasonable care in the development, design, manufacture, inspection, distribution, provision of warnings and instructions, of how to use the air suspension drivers' seat or notices that the air suspension seat could fail or drop unexpectedly, causing injury. DTNA/Freightliner understood that the air suspension drivers' seats would be used by the public and ultimate users, like the Plaintiff Eric Drake, for the purpose for which such product were intended.

44. Defendant Penske likewise had a duty to the Plaintiff to use reasonable care in the inspection, monitoring, maintaining, provision of warnings and instructions of how to use the air suspension drivers' seat of the M2 Freightliner truck, when leasing the truck to the public and ultimate users, like the Plaintiff Eric Drake, for the purpose for which such product were intended to be used. The Penske employee who leased the M2 Freightliner truck to the Plaintiff failed to go over the functions of the air suspension drivers' seat with the Plaintiff at the time the Plaintiff took possession of the truck as described herein on or about August 1, 2009.

45. Defendants Penske and DTNA/Freightliner breached said duty and are guilty of one or more of the following negligent acts and/or omissions:

    a. Failing to use due care in the development, design, manufacturing, labeling, testing, assembly, and inspection of the air suspension drivers' seat that were installed in the M2 Freightliner, the same or similar to the air suspension drivers' seats that were installed in the truck that the Plaintiff leased from Defendant Penske, and that there were known problems with air suspensions drivers' seats in DTNA/Freightliner products and that the seats could drop unexpectedly without warning;

    b. Failing to provide adequate and proper warnings to the public and to Plaintiff of the dangerous and unstableness of the air suspension drivers' seat that are known to drop unexpectedly without prior warning when used in a reasonably foreseeable manner;

9

    c.    Failing to design, manufacture and incorporate reasonable safeguards and protections against the type of injury and damages suffered by the Plaintiff Eric Drake when used in a reasonably foreseeable manner;

    d.    Failing to adequately prevent, identify, mitigate, and fix defective designs and hazards associated with the air suspension drivers' seats in the M2 Freightliner trucks and or vehicles built by Freightliner were the air suspension drivers' seats are known to drop unexpectedly without prior warning. And the air suspension seats would not in all probability have failed if a better design were used and more effective practices by DTNA/Freightliner and if Penske had preformed regular maintenance;

    e.    Defendants DTNA/Freightliner and Penske failing to notify and warn the public including Plaintiff of any reported incidents involving injury, etc., and the probability of the air suspension seat causing a failure or injury, thus misrepresenting the safety of the product;

    f.    DTNA/Freightliner failing to make timely and adequate corrections to the manufacturing, and design to the air suspension drivers' seats used in their products, including the M2 Freightliner, similar to the vehicle the Plaintiff leased from Defendant Penske, to prevent and/or minimize the problems or injuries suffered by the air suspension seats that are known to drop unexpectedly without prior warning;

    g.    Freightliner failing to use due care in the testing, inspection, distribution, sale and instructions regarding the product at all times prior to Plaintiffs' injuries having manifested themselves; and

    h.    Penske and DTNA/Freightliner's otherwise being careless and negligent.

46.    Defendant DTNA/Freightliner knew or should have known form their studies, testing, and recalls, that the air suspension drivers' seats could fail and cause injury from the air

suspension seats history, and that the seats were defective.

47. Defendant Penske knew or should have known form their daily use of the M2 Freightliner truck with the air suspension drivers' seats and Freightliner studies and testing, recalls, (Penske's testing if it was carried out maintenance timely and properly) that the air suspension seats could fail and cause injury from the seats history, and that the seats were defective.

48. Defendant DTNA/Freightliner knew or should have known that the air suspension seats in the M2 Freightliner truck were known to cause failure, and knew of different safer alternatives and adequate corrections that were available which would have avoided the incident, and Plaintiffs' damages and injury.

49. Defendant DTNA/Freightliner developed, designed, manufactured, labeled, tested, inspected, sold, distributed and otherwise placed on the market the air suspension drivers' seats in their vehicles and in the stream of commerce, and/or in a manner and in a condition unreasonably dangerous to the consumer.

50. Plaintiff's damages and injuries are the legal and proximate result of the negligent actions of Defendants Penske and DTNA/Freightliner. As a result, defendants Penske and DTNA/Freightliner are liable to Plaintiff for compensatory and general damages.

51. Plaintiff Eric Drake losses were the legal and proximate result of the defects associated with the air suspension drivers' seats of the M2 Freightliner, including but not limited to Defendants' Penske and DTNA/Freightliner failure to provide adequate instructions for use and warnings of the risks of substantial harm associated with the foreseeable use of said products. Thus, DTNA/Freightliner and Penske's negligence Plaintiff has and continues to suffer damages.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES AND DUTIES
### AGAINST DEFENDANTS PENSKE AND DAIMLER/FREIGHTLINER TRUCKS

52. Plaintiff incorporate by reference all other paragraphs in this Complaint as it fully set forth herein and further alleges as follows.

53. Defendant DTNA/Freightliner designed, manufactured, and distributed the M2 Freightliner truck with the air suspension drivers' seats that were known to drop unexpectedly without prior warning.

54. At the time that Defendant DTNA/Freightliner manufactured, marketed, distributed, supplied, and/or sold the M2 Freightliner truck, they knew of the probability that the air suspension drivers' seats could drop unexpectedly without prior warning, and were intended and impliedly warranted it to be free of malfunctions and safe and fit for use.

55. Plaintiff Eric Drake was intended user of the M2 Freightliner with its air suspension drivers' seat that was known by Defendant Freightliner to be defective and could drop unexpectedly without prior warning. The Plaintiff Eric Drake reasonably relied upon the skill, superior knowledge and judgment of Defendants DTNA/Freightliner and Penske.

56. Plaintiff Eric Drake leased the M2 Freightliner truck with the defective air suspension drivers' seats and had intended to use the truck to transport his personal goods.

57. Due to Defendants Penske and DTNA/Freightliner wrongful conduct as alleged herein, Plaintiff Eric Drake could not have known about the nature of the risks and possible failure of the drivers' air suspension seat until after he operated the truck, at which time the air suspension seat dropped in a abrupt downward violent motion, causing injury to the Plaintiff.

58. Contrary to the implied warranty for the subject product, the M2 Freightliner truck air suspension drivers' seat are known to drop unexpectedly without prior warning, and that these seats are not safe to operate and use, and were not safe or fit for their intended use and purpose, as alleged herein.

60. Penske had a duty to maintain, inspect, the M2 Freightliner truck that the Plaintiff leased, to assure that it was safe to operate and use, including maintaining and inspecting the air suspension drivers' seats in the M2 Freightliner truck. Defendant Penske failed to maintain that duty, and to do what they could have done, which resulted in the Plaintiff being injured.



61. As alleged herein, as a direct and proximate result of Defendants DTNA/Freightliner and Penske breached their warranties and duties. The defendant's acts and omissions, and the unreasonably dangerous and defective characteristics of the M2 Freightliners air suspension drivers' seat, caused the Plaintiff to suffer continually severe physical injuries, and emotional distress. Plaintiff Eric Drake has incurred medical expenses and care and treatment. The Plaintiff seeks actual and punitive damages from Defendants Penske, and DTNA/Freightliner as alleged herein.

## FOURTH CAUSE OF ACTION
## DECEPTIVE /UNFAIR TRADE PRACTICES AGAINST ALL DEFENDANTS

62. Plaintiff incorporate by reference all other paragraphs in this Complaint as it fully set forth herein and further alleges as follows.

63. Plaintiff is a consumer as defined under the Texas Deceptive Trade Practice Act and the Texas Business & Com. Code § 17.45(4) in that he sought to lease a truck from the Defendant Penske.

64. Defendant Penske was unfair and deceptive to the Plaintiff when they presented a M2 Freightliner truck that appeared to be and was offered to the Plaintiff as safe and free of mechanical problems and defects. The air suspension drivers' seat in the M2 Freightliner truck that the Plaintiff leased was defective, resulting in the Plaintiff being injured. Penske would have known that the drivers' seat was defective, if regular maintenance and inspections were carried out on the M2 Freightliner truck, including the air suspension drivers' seats of the vehicle.

65. Defendant Penske offered a M2 Freightliner truck to the Plaintiff for lease that was not safe to operate or use.

66. Defendant DTNA/Freightliner designed, manufactured, and distributed the M2 Freightliner truck with the air suspension drivers' seats that were known to drop unexpectedly without prior warning.



67. At the time that Defendant DTNA/Freightliner manufactured, marketed, distributed, supplied, and/or sold the M2 Freightliner truck, they knew of the probability that the air suspension drivers' seats could drop unexpectedly without prior warning. DTNA/Freightliner intended and impliedly warranted as foresaid truck and seat to be free of malfunctions and safe and fit for use.

68. For Defendants Penske and DTNA/Freightliner actions to be considered as fraudulent and/or deceptive, the Plaintiff (the defrauded party) must have relied on Defendants Penske and Freightliner that the M2 Freightliner truck that the Plaintiff leased on or about August 1, 2009, was safe to operate and use. And the Plaintiff accepted the item (M2 Freightliner truck) to his own demise, which did occur. Under the unfair or deceptive acts or practices, the Plaintiff do not have to show that a claim or representation was intended to deceive, the Plaintiff only need to show that it had the capacity effect or tendency to deceive. The capacity to deceive can be found without a finding that anyone has actually been deceived.

69. It was unfair trade practices of Defendant DTNA/Freightliner to sale, market, distribute and supply to companies and consumers, and businesses, a vehicle that had known problems, which made the vehicle unsafe and dangerous to operate and use—which could result in injuries.

70. As alleged herein, as a direct and proximate result of Defendants Freightliner and Penske acts and omissions, and the unreasonably dangerous and defective characteristics of the M2 Freightliners air suspension drivers' seat caused the Plaintiff to continually suffer severe physical injuries, and emotional distress. Plaintiff has endured pain and suffering. The Plaintiff seeks actual and punitive damages from Defendants Penske, and Freightliner as alleged herein.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE TEXAS INSURANCE CODE
### AND DECEPTIVE TRADE PRACTICES AGAINST GALLAGHER AND PENSKE

71. Plaintiff incorporate by reference all other paragraphs in this Complaint as it fully set forth herein and further alleges as follows.



72. Defendant Gallagher actions against the Plaintiff were unfair settlement practices pursuant to Section 541.060 of the Texas Insurance Code and the Texas Insurance Code § 542.003. Defendant Gallagher or Penske made no attempt to offer any amount to compensate or to pay for the Plaintiffs medical expenses and made no offer to pay for any other damages as it relates to the August 1, 2009 incident, which were caused by the M2 Freightliners defective air suspension drivers' seat.

73. Gallagher was also unfair to the Plaintiff in that its representatives refused to pay the Plaintiffs' medical expenses, and finally refused to pay any amount on the Plaintiffs claim when he had provided medical evidence (medical bills, affidavits of cost, affidavits of medical records) to Gallagher. The Plaintiff seeks actual and punitive damages from Defendants Gallagher as alleged herein.

74. As alleged herein, as a direct and proximate result of Defendants Gallagher acts and omissions, Defendant Gallagher was unfair and deceptive regarding its settlement practices, which in this case Defendant Gallagher refused to compensate the Plaintiff for any of his damages or medical expenses. The Plaintiff seeks actual and punitive damages from Defendants Gallagher as alleged herein.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiff pleads a cause of action against Defendants Gallagher, Penske, DTNA/Freightliner and for its intentional inflictions of emotional distress. The allegations contained in all of the paragraphs of the Complaint are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as se forth verbatim. Plaintiff further shows as follows:

   a). By DTNA/Freightliner wrongly marketing a vehicle with a seat that Defendants DTNA/Freightliner knew or should have known was defective;

15



b). By extreme and outrageous behavior of Gallagher and Penske refusing to pay the Plaintiff any benefits for his injuries suffered as a result of the defective DTNA/Freightliner truck he leased from Penske;

c). By Gallagher constructively disregarding the Plaintiff's medical bills and medical records, refusing to pay the Plaintiff any compensation for his injuries;

d). By Gallagher's outrageous behavior of openly violating the Texas Insurance Code in order to prevent the Plaintiff from receiving any compensation for the injuries he sustained by and through the August 1, 2009 accident;

e). By Defendants named herein outrageous behavior of committing deceptive trade practices to prevent the Plaintiff from receiving any compensation for the injuries he sustained by and through the August 1, 2009 accident;

76. As a result of the above Defendants intentional inflictions to the Plaintiff, the Plaintiff has suffered, and will continue to suffer, actual damages, loss income and benefits, embarrassment, humiliation and emotional distress. Plaintiff has no adequate remedy at law and therefore declaratory and injunctive relief is appropriate to redress the wrongs committed by the above Defendants. The intentional emotional distress caused by the Defendants was aggravated by the kind of willfulness; deceptive and unfair trade practices, and malice for which the law allows imposition of exemplary damages.

## DAMAGES

77. Plaintiff suffered medical bills, pain and suffering as a result of the August 1, 2009 automobile accidents and as a result of Defendants willful and intentional behavior against the Plaintiff. Plaintiff has incurred expenses in seeking relief to the Defendants willful and intentional behavior. Plaintiff by this action, seeks compensatory damages, expert fees, cost, interest, punitive damages, and all other monies and damages to which he may be entitled and:

- Attorneys' fees for preparation and trial;
- Attorneys' fees if there is to be an appeal to the 5th Court of Appeals in Dallas;
- Attorneys' fees if there is to be an appeal to the Supreme Court of Texas;
- Loss of the benefit of the bargain;
- Incidental damages;
- Past mental anguish;
- Future mental anguish;
- Excess in loss wages and medical from the policy limits;
- Future and past emotional distress;
- Damage to credit and loss of property and goods.

## PARYER FOR RELIEF

78. Wherefore, Plaintiff prays for a judgment against Defendants Travelers/CCM and each of them as follows:

1. Special damages for Plaintiff Eric Drake in an amount to be determined at trial;
2. General damages for Plaintiff Eric Drake in an amount to be determined at trial;
3. Punitive Damages in an amount to be determined at trial;
4. Cost of suit;
5. Attorney fees for preparation and trial;
6. Attorney fees if there is to be an appeal to the Supreme Court of Texas;
7. Incidental damages;
8. Past mental anguish;
9. Future mental anguish;



10. Past and future emotional distress;

11. Prejudgment interest;

12. For such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

79. Plaintiff hereby demands trial by jury as to all issues.

Respectfully submitted,

Eric Drake
PO Box 25565
Dallas, Texas 75225
214-492-9269

CERTIFIED A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE IN MY OFFICE

SHERRI ADELSTEIN
DENTON COUNTY DISTRICT CLERK

5/2/12  By: _____ Deputy Clerk
Date